## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THE CINCINNATI INSURANCE
COMPANY,

               Plaintiff,

   vs.

KANSAS STATE UNIVERSITY
FOUNDATION,

and

FORREST L. "LENNY" GEIST,

               Defendants.

Case No. 6:23-CV-01139-JAR-GEB

## DEFENDANT KANSAS STATE UNIVERSITY FOUNDATION'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND COUNTERCLAIMS

Defendant Kansas State University Foundation ("KSUF"), by and through undersigned counsel, for its Answer to Plaintiff The Cincinnati Insurance Company's ("Cincinnati") Complaint states as follows:

### PARTIES, JURISDICTION AND VENUE

1.    Cincinnati is an insurance company organized and existing under the laws of the state of Ohio, with its principal place of business in the state of Ohio, and for purposes of diversity jurisdiction, Cincinnati is a citizen of Ohio.

**ANSWER:**   On information and belief, KSUF admits the allegations contained in Paragraph 1.

2.    Cincinnati is authorized to conduct insurance business in Kansas by the Kansas Insurance Department.

**ANSWER:**   KSUF is without knowledge or information sufficient to form a belief as to

62555649

the allegations in Paragraph 2, and therefore denies the same.

3.      Upon information and belief, Defendant Kansas State University Foundation (hereinafter, "KSUF") is a not for profit corporation organized and existing under the laws of the state of Kansas, with its principal place of business in Kansas, and for purposes of diversity jurisdiction, KSUF is a citizen of Kansas.  KSUF may be served with process at 515 Kansas Avenue, Topeka, Kansas 66603.

**ANSWER:**     KSUF admits the allegations in Paragraph 3.

4.      Defendant Forrest L. Geist and Heirs (hereinafter, "Geist") is an individual and a resident of the state of Kansas, and for purposes of diversity jurisdiction, Mr. Geist is a citizen of Kansas.  Mr. Geist may be served with process at 11334 W. 131st Street, Overland Park, Kansas 66213.

**ANSWER:**     KSUF is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 4, and therefore denies the same.

5.      On or about April 28, 2023, Forrest L. "Lenny" Geist filed a lawsuit on behalf of himself and his "heirs" in McPherson County Kansas District Court styled *Forrest L. "Lenny" Geister and Heirs v. Kansas State University, Kansas State University Foundation, Network Kansas, Northwest Kansas Innovation Center, Inc., Western Kansas Rural Economic Development Alliance and Lt. Governor David Toland & KDOC Associates, etc.*, Case No. MP-2023-CV-000036 (the "Underlying Lawsuit") wherein Mr. Geist and "heirs" seek a determination of liability and damages against the other parties in the Underlying Lawsuit.

**ANSWER:**     KSUF admits that Forrest L. Geist is the plaintiff in a lawsuit captioned *Forrest L. "Lenny" Geist v. Kansas State University et al.*, originally filed in the District Court of McPherson County, Kansas as case number MP-2023-CV-000036, and later filed in the United

62555649

States District of Kansas as case number 2023-cv-01129 (the "Geist Lawsuit"). KSUF states that the documents filed in the Geist Lawsuit speak for themselves and denies the allegations in Paragraph 5 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 5.

6.     The Underlying Lawsuit was removed to the United States District Court for the District of Kansas, case number: 2023-cv-01129.

**ANSWER:**    KSUF admits the Geist Lawsuit was removed from McPherson County District Court to the United States District Court for the District of Kansas where it is currently pending as case number 6:23-CV-01139-JAR-GEB.

7.     Defendant KSUF has tendered the Underlying Lawsuit to Cincinnati for defense and liability coverage under an insurance policy issued by Cincinnati to KSUF.

**ANSWER:**    KSUF admits the allegations in Paragraph 7.

8.     Plaintiff Cincinnati is currently providing a defense to KSUF under a full reservation of rights.

**ANSWER:**    KSUF denies the allegations in Paragraph 8.

9.     KSUF and Geist are subject to personal jurisdiction in this District, and are subject to the Court's specific and general jurisdiction, pursuant to due process, on the grounds that they either reside in the state of Kansas, regularly conduct or solicit business in the state of Kansas, and/or engage in other persistent courses of conduct in the state of Kansas.

**ANSWER:**    The allegations in Paragraph 9 state legal conclusions and thus no answer is required.  To the extent an answer is required, KSUF does not dispute that this Court has personal jurisdiction over KSUF but denies the remaining allegations in Paragraph 9.

62555649

10.     The United States District Court for the District of Kansas maintains jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 exclusive of interest and costs, and the action is between citizens of the different states.

**ANSWER:**     The allegations in Paragraph 10 state legal conclusions and thus no answer is required.  To the extent an answer is required, KSUF does not dispute that this Court has subject matter jurisdiction to hear this matter but denies the remaining allegations in Paragraph 10.

11.     The United States District Court for the District of Kansas maintains jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 2201(a), because this Complaint for Declaratory Judgment seeks the judicial declaration of the rights, statutes, and legal relations of and among the parties with regard to the contracts of insurance and because an actual case or controversy of a judicial nature exists among the parties.

**ANSWER:**     The allegations in Paragraph 11 state legal conclusions and thus no answer is required.  To the extent an answer is required, KSUF does not dispute that this Court has jurisdiction to hear this matter but denies the remaining allegations in Paragraph 11.

12.     Venue is proper in the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this dispute occurred in said judicial district.  Venue is also proper under 28 U.S.C. § 1391(b)(3).

**ANSWER:**     The allegations in Paragraph 12 state legal conclusions and thus no answer is required.  To the extent an answer is required, KSUF does not dispute that venue is proper in this Court but denies the remaining allegations in Paragraph 12.

13.     Divisional Venue is proper in the Wichita Division of the United States District Court for the District of Kansas.

62555649

**ANSWER:**    The allegations in Paragraph 13 state legal conclusions and thus no answer is required.  To the extent an answer is required, KSUF does not dispute that venue is proper in this Court but denies the remaining allegations in Paragraph 13.

**FACTS COMMON TO ALL COUNTS**
**Geist's allegations in the Underlying Suit**

14.    Mr. Geist alleged that KSUF, along with other named parties in the Underlying Lawsuit, have misappropriated intellectual property, trade secrets, copy-righted materials that Geist allegedly created and owned.

**ANSWER:**    KSUF states the documents filed in the Geist Lawsuit speak for themselves and denies the allegations in Paragraph 14 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 14.

15.    A copy of Mr. Geist's filed petition is attached as Exhibit A.

**ANSWER:**    KSUF admits that Exhibit A to Cincinnati's Complaint appears to be a true and correct copy of the Petition[1] filed in the Geist Lawsuit.

16.    Mr. Geist alleges that on or around February 1, 2017, he alleged formulated certain technologies, concepts and initiatives for use presumably in the agriculture space, and further claims he documented the purported works and vision into a confidential, proprietary business plan.  (Ex. A., Petition, p.2, ¶ 4).

**ANSWER:**    KSUF states the documents filed in the Geist Lawsuit speak for themselves and denies the allegations in Paragraph 16 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or

---

[1] The Petition filed in the Geist Lawsuit is incorrectly titled as a "Complaint."

62555649

incomplete.  KSUF denies the remaining allegations contained in Paragraph 16.

17.    Mr. Geist alleges that on July 9, 2018, he met with various leaders of KSUF and KSUF President, Greg Willems, to present his ideas, which he claims he brought with him in the form of a 157 [sic] page slide deck on a flash drive.  (Ex. A, Petition, p. 4, ¶ 11).

**ANSWER:**    KSUF states the documents filed in the Geist Lawsuit speak for themselves and denies the allegations in Paragraph 17 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 17.

18.    Mr. Geist alleges that six weeks after the July 9, 2018 meeting, KSUF allegedly informed Mr. Geist that KSUF had no interest in learning more.  (Ex. A., Petition, p. 4, ¶ 12).

**ANSWER:**    KSUF states the documents filed in the Geist Lawsuit speak for themselves and denies the allegations in Paragraph 18 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 18.

19.    Mr. Geist alleges that at some point after the meeting, KSUF and other named defendants in the Underlying Lawsuit, misappropriated the purportedly confidential, proprietary business plans, and documents.  (Ex. A, Petition, p. 6, ¶ 3).

**ANSWER:**    KSUF states the documents filed in the Geist Lawsuit speak for themselves and denies the allegations in Paragraph 19 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 19.

20.    Mr. Geist alleges that he learned of the supposed infringement when "Defendants" announced a "K-State 105" campaign on January 17, 2023, which Mr. Geist claims is an "illegal

62555649

initiative aimed at pirating Plaintiff's IP/TS/CC and calls within the 'Doctrine of Equivalents' legal foundation, etc." (Ex. A, Petition, p. 6, ¶ 4).

**ANSWER:**    KSUF states the documents filed in the Geist Lawsuit speak for themselves and denies the allegations in Paragraph 20 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete. KSUF denies the remaining allegations contained in Paragraph 20.

21.    Mr. Geist's Petition in the Underlying Lawsuit lists ten counts against the named defendants, including KSUF. (Ex. A., Petition, pp. 7-10).

**ANSWER:**    KSUF admits the allegations in Paragraph 21.

22.    In the Section titled "Prayer" [sic] Mr. Geist, among other requests, seeks damages for alleged emotional distress. (Ex. A., Petition, p. 11, ¶ 1(D)).

**ANSWER:**    KSUF states the documents filed in the Geist Lawsuit speak for themselves and denies the allegations in Paragraph 22 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete. KSUF denies the remaining allegations contained in Paragraph 22.

### Notice of the Underlying Lawsuit by KSUF to Cincinnati

23.    In a letter dated April 26, 2023, KSUF [sic] by and through its coverage counsel, Lathrop GPM, LLP, sent Cincinnati a letter informing Cincinnati of a potential claim from Mr. Geist and attached Mr. Geist's cease-and-desist letter to KSUF.

**ANSWER:**    KSUF admits that it tendered notice of a claim to Cincinnati on April 26, 2023, which included a copy of a cease-and-desist letter from Geist to KSUF. KSUF denies the remaining allegations in Paragraph 23.

24.    In a letter dated May 15, 2023, KSUF informed Cincinnati that a complaint against

62555649

KSUF has [sic] recently been filed in state court.  A copy of the Petition was attached to the letter.

**ANSWER:**    KSUF states that it sent Cincinnati a supplemental claim notice dated May 15, 2023 which included a copy of the Petition filed in the Geist Lawsuit.  KSUF denies the remaining allegations in Paragraph 24.

### The Cincinnati Policy

25.    Cincinnati issued KSUF a Commercial General Liability (CGL) Policy, Policy No. EPP 037 45 79, with a policy period from April 1, 2016 to April 1, 2019 (hereinafter, the "Policy").

**ANSWER:**    KSUF admits the allegations in Paragraph 25.

26.    To the extent the alleged loss is determined to have occurred on a date after April 1, 2019, the policies of insurance between KSUF and Cincinnati in effect after April 1, 2019 contain the same operative provisions as the Policy (in effect from April 1, 2016 to April 1, 2019) and are equally applicable to the issues involved in this Complaint for Declaratory Judgment.

**ANSWER:**    The allegations in Paragraph 26 state legal conclusions and thus no response is required.  To the extent a response is required, KSUF admits that Cincinnati issued general liability insurance policies to KSUF for the policy periods of April 1, 2019 through April 1, 2023. KSUF further states the policies issued by Cincinnati to KSUF speak for themselves and denies the allegations in Paragraph 26 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 26.

27.    The Policy includes a Commercial General Liability Coverage Form which includes the following particularly pertinent terms and conditions:

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.    Insuring Agreement**

62555649

**a.**    We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .

**b.**    This insurance applies to "bodily injury" and "property damage" only if:

    **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)**    Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d**. below that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

    **c.**    "Bodily injury" or "property damage" which:

        (1) Occurs during the "coverage term" and
        (2) Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

        Includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

    **d.**    You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

    **(4)**    Becomes aware, or reasonably should have become aware, by any means other than as described in (3) above, that "bodily injury" or "property damage" had occurred or had begun to occur…[sic]

The Policy, pp. 16 and 19, defines "occurrence" and "bodily injury" as follows.[sic]

4.    "Bodily Injury" means: bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time.

62555649

16.     "Occurrence" means an accident, including continuous or repeated exposure to the same general harmful conditions. …

\*          \*          \*

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

1.      Insuring Agreement

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

b.      This insurance applies to "personal and advertising injury" on [sic] if:

(1)  The "personal and advertising injury" is caused by an offense arising out of your business; and
(2)  The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and
(3)  Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph 1.d. below, that the offense had been committed or had begun to be committed, in whole or in part.

c.      "Personal and advertising injury" caused by an offense which:
(1) Was committed during the "coverage term"; and
(2) Was not, prior to the "coverage term", known by you, per Paragraph 1.d. below, to have been committed;…

d.      You will be deemed to know that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative"…

(4) Becomes aware, or reasonably should have become aware, by any means, other than described in (3) above, that the offense had been committed or had begun to be committed…

2.      Exclusion [sic]

This insurance does not apply to:

a.      **Knowing Violation or Rights of Another**
"Personal and advertising injury" caused by or at the direction of the insured

62555649

- 10 -

with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**d.    Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**i.    Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

**Section V – Definitions**

1. "Advertisement" means a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  "Advertisement" includes a publicity article.  For purpose of this definition:

   a.    Notices that are published include material placed on the internet or on similar electronic means of communication; and

   b.    Regarding web-sites, only that part of the web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement."

17.    "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

   f.    The use of another's advertising idea in your "advertisement" or

   g.    Infringing on another's copyright, trade dress or slogan in your "advertisement".

**COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM, US 101UM1204**

B.    Exclusions:

This insurance does not apply to:

15.    **Infringement of Copyright, Patent, Trademark or Trade Secret**

62555649

- 11 -

"personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement in your "advertisement," of copyright, trade dress or slogan.

**Section V – Definitions**

4. "Bodily Injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss or [sic] services or death resulting from any of these at any time.

16. "Occurrence" means:

   a. An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage" or

   b. An offense that results in "personal and advertising injury."

17. "Personal and advertising injury" means injury including "bodily injury" arising out of one or more of the following offenses:
   g. The use of another's advertising idea in your "advertisement"

   h. Infringing on another's copyright, trade dress, or slogan in your "advertisement."

                               *          *          *

**ANSWER:**   KSUF states the policies issued by Cincinnati to KSUF speak for themselves and denies the allegations in Paragraph 27 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 27.

28.   The definitions of "Advertisement" in the Commercial Umbrella Liability Coverage form are identical to the definitions of the foregoing terms in the Commercial General Liability Coverage Form.

**ANSWER:**   KSUF states the policies issued by Cincinnati to KSUF speak for themselves and denies the allegations in Paragraph 28 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading,

62555649

or incomplete.  KSUF denies the remaining allegations contained in Paragraph 28.

**Count I – Declaratory Judgment**
**(Retaining Counsel for KSUF)**

29.     Cincinnati incorporates by reference as though fully set forth herein the allegations contained in all of the above paragraphs of this Complaint for Declaratory Judgment.

**ANSWER:**    Paragraph 29 does not contain any allegation to which a response is required.  To the extent a response is required, KSUF denies the allegations in Paragraph 29.

30.     On May 30, 2023, Cincinnati informed KSUF that Cincinnati retained counsel to represent KSUF under a reservation of rights, which would be sent to KSUF in the coming days.

**ANSWER:**    KSUF admits that Cincinnati sent KSUF an email dated May 30, 2023 advising that it had retained Greg Young of Hinkle Law Firm to represent KSUF and that Cincinnati would be sending a reservation for rights to KSUF.  KSUF denies the remaining allegations in Paragraph 30.

31.     KSUF, through Lathrop GPM, responded to that email on the same day, informing Cincinnati that KSUF has already chosen to hire Lathrop GPM to serve as defense counsel for KSUF in the Underlying Lawsuit.

**ANSWER:**    KSUF admits that it sent an email through counsel to Cincinnati dated May 30, 2023 advising that Lathrop GPM LLP was serving as KSUF's defense counsel in the Geist Lawsuit.  KSUF denies the remaining allegations in Paragraph 31.

32.     Cincinnati considered KSUF's request to retain Lathrop GPM as defense counsel rather than panel counsel Cincinnati selected to defend the case.  Thereafter, coverage counsel for Cincinnati spoke with Lathrop several times in an attempt to determine whether KSUF and Cincinnati could find mutually agreeable terms for Lathrop's involvement as defense counsel.

**ANSWER:**    KSUF admits that it had discussions with Cincinnati regarding Lathrop

62555649

GPM's continued retention as KSUF's defense counsel.  KSUF states that it is without information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 32 and therefore denies the same.

33.     On June 23, 2023, coverage counsel for Cincinnati sent KSUF a reservation of rights letter.  The letter discusses the then-known coverage issues.  Furthermore, the letter also informed KSUF that Cincinnati considered KSUF's request to hire Lathrop GPM as defense counsel, but that Cincinnati is choosing to select a different firm to represent KSUF in the Underlying Lawsuit.

**ANSWER:**     KSUF admits that Cincinnati issued correspondence dated June 23, 2023, in which Cincinnati advised it had selected the Hinkle Law Firm to defend KSUF against the Geist Lawsuit.  KSUF states that this written coverage correspondence speaks for itself, and KSUF denies the allegations in Paragraph 33 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of that correspondence are inaccurate, inconsistent, misleading, or incomplete.  KSUF further denies any remaining allegations in Paragraph 33.

34.     KSUF sent a letter dated June 30, 2023 indicated that it "…must respectfully disagree with Cincinnati's attempt to hire panel counsel and insist that Lathrop continue to represent KSUF as independent counsel with Cincinnati paying Lathrop's customary rates…[sic]"

**ANSWER:**     KSUF admits that it sent correspondence dated June 30, 2023 to Cincinnati advising the conflict of interest between KSUF and Cincinnati entitled KSUF to independent counsel and that KSUF had retained Lathrop GPM LLP as defense counsel in the Geist Lawsuit.  KSUF further states that this written coverage correspondence speaks for itself, and KSUF denies the allegations in Paragraph 34 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of that correspondence are inaccurate, inconsistent, misleading, or incomplete.

62555649

KSUF further denies any remaining allegations in Paragraph 34.

35.     On July 7, 2023, the coverage counsel for Cincinnati spoke to Lathrop once more pertaining to KSUF's request to hire Lathrop as defense counsel.

**ANSWER:**     KSUF admits counsel for Cincinnati and counsel for KSUF participated in a conference call on July 7, 2023 regarding KSUF's retention of Lathrop as defense counsel in the Geist Lawsuit.

36.     On July 13, 2023, Coverage counsel for Cincinnati informed KSUF that Cincinnati will continue with its plan to retain panel counsel that it initially selected to defend the Underlying Lawsuit on behalf of KSUF subject to a full reservation of rights.

**ANSWER:**     KSUF admits that Cincinnati sent an email to counsel for KSUF stating that Cincinnati was going retain the Hinkle Law Firm to serve as KSUF's defense counsel in the Geist Lawsuit.  KSUF further states that this written coverage correspondence speaks for itself, and KSUF denies the allegations in Paragraph 36 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of that correspondence are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies any remaining allegations in Paragraph 36.

37.     The Policy provides that in the event of a suit, the insured is required to cooperate with Cincinnati in the investigation or settlement of the claim or defense against the suit.

**ANSWER:**     KSUF states the insurance policies issued by Cincinnati to KSUF speak for themselves and denies the allegations in Paragraph 37 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 37.

38.     Cincinnati is permitted under the Policy to select counsel to defend its insured in the event of a suit.

**ANSWER:**     KSUF denies the allegations in Paragraph 38.

39.     Cincinnati selected panel counsel, Gregory S. Young of the Hinkle Law Firm, to defend KSUF in the Underlying Lawsuit.

**ANSWER:**     KSUF admits that Cincinnati sought to retain Gregory S. Young of Hinkle Law Firm to serve as KSUF's defense counsel in the Geist Lawsuit.  KSUF denies the remaining allegations in Paragraph 39.

40.     Mr. Young and the Hinkle Law Firm are competent and qualified to defend KSUF in the Underlying Lawsuit under a reservation of rights.

**ANSWER:**     The allegations in Paragraph 40 state legal conclusions and thus no response is required.  To the extent a response is required, KSUF is without information or knowledge sufficient to form a belief as to the allegations in Paragraph 40, and therefore denies the same.

41.     Mr. Young and the Hinkle Law Firm are independent counsel.

**ANSWER:**     KSUF states the allegations in Paragraph 41 are vague and ambiguous such that KSUF cannot admit or deny them, and, accordingly, KSUF denies the same.

42.     Cincinnati has met its obligations under the Policy to KSUF to provide a defense subject to further investigation and under a full reservation of rights.

**ANSWER:**     KSUF denies the allegations in Paragraph 42.

43.     KSUF is not permitted to select its own counsel to defend it under the Policy and compel Cincinnati to pay for the defense.

**ANSWER:**     KSUF denies the allegations in Paragraph 43.

KSUF further denies that Cincinnati is entitled to any of the remedies or requested relief set forth immediately following Paragraph 43, listed under the "WHEREFORE" paragraph.

62555649

## COUNT II – DECLARATORY JUDGMENT
### (Bodily Injury and Property Damage)

44.     Cincinnati incorporates by reference as though fully set forth herein the allegations contained in all of the above paragraphs of this Complaint for Declaratory Judgment.

**ANSWER:**     Paragraph 44 does not contain any allegation to which a response is required.  To the extent a response is required, KSUF denies the allegations in Paragraph 44.

45.     The Policy provides that Cincinnati will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies and Cincinnati will have the right and duty to defend KSUF against any suit seeking those damages.

**ANSWER:**     KSUF states the insurance policies issued by Cincinnati to KSUF speak for themselves and denies the allegations in Paragraph 45 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 45.

46.     However, Cincinnati has no duty to defend the insured against any suit seeking damages for bodily injury to which this insurance does not apply.

**ANSWER:**     The allegations in Paragraph 46 state legal conclusions and thus no response is required.  To the extent a response is required, KSUF is without information or knowledge sufficient to form a belief as to the allegations in Paragraph 46, and therefore denies the same.

47.     The Policy provides that this insurance applies to bodily injury and property damage only if the bodily injury or property damage is caused by an occurrence that takes place in the coverage territory.

**ANSWER:**     KSUF states the insurance policies issued by Cincinnati to KSUF speak for themselves and denies the allegations in Paragraph 47 to the extent Cincinnati's paraphrasing of,

quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 47.

48.    "Bodily injury" is defined in the Policy as bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

**ANSWER:**    KSUF states the insurance policies issued by Cincinnati to KSUF speak for themselves and denies the allegations in Paragraph 48 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 48.

49.    "Occurrence" is defined in the Policy as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**ANSWER:**    KSUF states the insurance policies issued by Cincinnati to KSUF speak for themselves and denies the allegations in Paragraph 49 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 49.

50.    The Complaint in the Underlying Lawsuit does not alleged [sic] that the Plaintiff therein sustained "bodily injury" as defined in the Policy and as that term is interpreted by Kansas courts.  The Complaint in the Underlying Lawsuit does not alleged [sic] physical injury.

**ANSWER:**    The allegations in Paragraph 50 state legal conclusions and thus no response is required.  To the extent a response is required, KSUF denies the same.

51.    Cincinnati has no duty to defend KSUF in the Underlying Lawsuit because the allegations therein do not state allegations which meet the requirements of the liability insuring agreement for Coverage A – Bodily Injury and Property Damage Liability contained in the Policy.

**ANSWER:**    The allegations in Paragraph 51 state legal conclusions and thus no response

62555649

is required.  To the extent a response is required, KSUF denies the same.

52.     Cincinnati has no duty to indemnify KSUF in the Underlying Lawsuit because the allegations therein do not state allegations which meet the requirements of the liability insuring agreement for Coverage A – Bodily Injury and Property damage [sic] Liability contained in the Policy.

**ANSWER:**     KSUF states that Cincinnati's duty to indemnify is not currently ripe for adjudication but that KSUF may be entitled in the future to indemnity from Cincinnati in connection with the Geist Lawsuit.  KSUF further states the allegations in Paragraph 52 state legal conclusions and thus no response is required.  To the extent a response is required, KSUF denies the same.

KSUF further denies that Cincinnati is entitled to any of the remedies or requested relief set forth immediately following Paragraph 52, listed under the "WHEREFORE" paragraph.

**COUNT III – DECLARATORY JUDGMENT**
**(Personal and Advertising Injury)**

53.     Cincinnati incorporates by reference as though fully set forth herein the allegations contained in all of the above paragraphs of this Complaint for Declaratory Judgment.

**ANSWER:**     Paragraph 53 does not contain any allegation to which a response is required.  To the extent a response is required, KSUF denies the allegations in Paragraph 53.

54.     The Policy provides that Cincinnati will pay those sums that the insured becomes legally obligated to pay because of personal and advertising injury to which this insurance applies, and Cincinnati will have the right and duty to defend KSUF against any suit seeking those damages.

**ANSWER:**     KSUF states the insurance policies issued by Cincinnati to KSUF speak for themselves and denies the allegations in Paragraph 54 to the extent Cincinnati's paraphrasing of,

quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 54.

55.     However, Cincinnati has no duty to defend the insured against any suit seeking damages for personal and advertising injury to which this insurance does not apply.

**ANSWER:**     The allegations in Paragraph 55 state legal conclusions and thus no response is required.  To the extent a response is required, KSUF is without information or knowledge sufficient to form a belief as to the allegations in Paragraph 55, and therefore denies the same.

56.     "Personal and advertising injury" is defined in the Policy, in relevant part, as injury arising from the use of another's advertising idea in the insured's advertisement or infringing upon another's copyright, trade dress or slogan in the insured's advertisement.

**ANSWER:**     KSUF states the insurance policies issued by Cincinnati to KSUF speak for themselves and denies the allegations in Paragraph 56 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 56.

57.     The Policy provides coverage only for infringement of another's copyright, trade dress, or slogan in the insured's advertisement.  The Policy does not provide coverage for infringement of another's copyright, trade dress, or slogan occurs [sic] somewhere other than in the insured's advertisement.

**ANSWER:**     KSUF states the insurance policies issued by Cincinnati to KSUF speak for themselves and denies the allegations in Paragraph 57 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 57.

58.     To the extent Mr. Geist's allegations in the Underlying Lawsuit seek damage for

62555649

injuries that do not arise out of or are unrelated to advertisements by KSUF, such alleged damages do not fall within the definition of personal and advertising injury in the Policy and there is no coverage for such alleged damages.

     **ANSWER:**    The allegations in Paragraph 58 state legal conclusions and thus no response is required.  To the extent a response is required, KSUF denies the same.  Answering further, KSUF states the allegations in Paragraph 58 are irrelevant to determining Cincinnati's duty to defend, which requires Cincinnati to defend any allegation that may give rise to potential coverage.

     59.    The Policy also provides an explicit exclusion for the infringement of copyright, patent, trademark, trade secret, or other intellectual property right.

     **ANSWER:**    KSUF states the insurance policies issued by Cincinnati to KSUF speak for themselves and denies the allegations in Paragraph 59 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 59.

     60.    To the extent Mr. Geist's allegations in the Underlying Lawsuit seek damages for injuries arising out of KSUF's alleged infringement of copyright, patent, trademark, trade secret or other intellectual property rights, such claimed damages are excluded from coverage under the Policy.

     **ANSWER:**    The allegations in Paragraph 60 state legal conclusions and thus no response is required.  To the extent a response is required, KSUF denies the same.  Answering further, KSUF states the allegations in Paragraph 60 are irrelevant to determining Cincinnati's duty to defend, which requires Cincinnati to defend any allegation that may give rise to potential coverage.

     61.    The Policy also provides an explicit exclusion for coverage for personal and advertising injury caused by or at the direction of the insured with the knowledge that the act would

violate the rights of another and would inflict personal and advertising injury.

**ANSWER:**   KSUF states the insurance policies issued by Cincinnati to KSUF speak for themselves and denies the allegations in Paragraph 61 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 61.

62.   To the extent Mr. Geist's allegations in the Underlying Lawsuit seek damages for injuries arising out of any alleged conduct that was done with the knowledge that such conduct would violate the rights of another, such claimed damages are excluded from coverage under the Policy.

**ANSWER:**   The allegations in Paragraph 62 state legal conclusions and thus no response is required.  To the extent a response is required, KSUF denies the same.  Answering further, KSUF states the allegations in Paragraph 62 are irrelevant to determining Cincinnati's duty to defend, which requires Cincinnati to defend any allegation that may give rise to potential coverage.

63.   The Policy also provides an explicit exclusion from coverage for personal and advertising injury arising out of a criminal act committed by or at the direction of the insured.

**ANSWER:**   KSUF states the insurance policies issued by Cincinnati to KSUF speak for themselves and denies the allegations in Paragraph 63 to the extent Cincinnati's paraphrasing of, quoting of, or citations to the content of those documents are inaccurate, inconsistent, misleading, or incomplete.  KSUF denies the remaining allegations contained in Paragraph 63.

64.   To the extent Mr. Geist's allegations in the Underlying Lawsuit seek damages for conduct that is allegedly criminal in nature, such claimed damages are excluded from coverage under the policy [sic].

**ANSWER:**   The allegations in Paragraph 64 state legal conclusions and thus no response

62555649

- 22 -

is required.  To the extent a response is required, KSUF denies the same.  Answering further, KSUF states the allegations in Paragraph 64 are irrelevant to determining Cincinnati's duty to defend, which requires Cincinnati to defend any allegation that may give rise to potential coverage.

65.     The allegations asserted by Mr. Geist in the Underlying Lawsuit allege conduct and damages against KSUF that are outside the scope of coverage provided by the liability injuring [sic] agreement for Coverage B – Personal and Advertising Injury as described in the Policy.

**ANSWER:**     The allegations in Paragraph 65 state legal conclusions and thus no response is required.  To the extent a response is required, KSUF denies the same.  Answering further, KSUF states the allegations in Paragraph 65 are irrelevant to determining Cincinnati's duty to defend, which requires Cincinnati to defend any allegation that may give rise to potential coverage.

66.     Cincinnati has no duty to defend KSUF in the Underlying Lawsuit because the Petition does not state allegations which meet the requirements of the liability insuring agreement for Coverage B – Personal and Advertising Injury contained in the Policy.

**ANSWER:**     KSUF denies the allegations in Paragraph 66.

67.     Cincinnati has no duty to indemnify KSUF in the Underlying Lawsuit because the Petition does not state allegations which meet the requirements of the liability insuring agreement for Coverage B – Personal and Advertising Injury contained in the Policy.

**ANSWER:**     KSUF states that Cincinnati's duty to indemnify is not currently ripe for adjudication but that KSUF may be entitled in the future to indemnity from Cincinnati in connection with the Geist Lawsuit.  KSUF further states the allegations in Paragraph 67 state legal conclusions and thus no response is required.  To the extent a response is required, KSUF denies the same.

KSUF further denies that Cincinnati is entitled to any of the remedies or requested relief

set forth immediately following Paragraph 67, listed under the "WHEREFORE" paragraph.

## AFFIRMATIVE DEFENSES

KSUF, for its additional and further defenses to Cincinnati's Complaint, states as follows:

1.     Cincinnati's Complaint fails to state a claim upon which relief can be granted.

2.     Cincinnati's Complaint is barred, in whole or in part, to the extent it seeks relief inconsistent with or unavailable under the terms of the policies issued by Cincinnati to KSUF.

3.     Cincinnati's claims and defenses are barred by wavier and/or estoppel to the extent Cincinnati has failed to assert an exclusion or other condition precedent to coverage under the policies issued by Cincinnati to KSUF on which it intends to rely to deny coverage and because Cincinnati has taken inconsistent positions on the interpretation and/or application of relevant policy provisions by initially agreeing to participate in the defense and indemnity of the Geist Lawsuit filed against KSUF and then unilaterally reinterpreting the policy to exclude coverage for such suit.

4.     Cincinnati's claims and defenses are barred by laches to the extent Cincinnati failed to promptly raise one or more of its defenses to coverage.

5.     Cincinnati's claims and defenses are barred by unclean hands, and the fact that Cincinnati has acted wrongfully, unreasonable, and vexatiously, because Cincinnati has, without reasonable cause or excuse, failed or refused to indemnify KSUF for defense and settlement costs incurred in connection with the Geist Lawsuit.  Cincinnati has also refused, and continues to refuse, to accord any reasonable interpretation of the provisions in the insurance policies issued to KSUF and has refused, and continues to refuse, to accord any reasonable applicable of such provisions to KSUF's claim arising from the Geist Lawsuit.  In so refusing, Cincinnati has acted to protect its own financial interests in disregard of the interests of its insured, KSUF.  Cincinnati, knowing that

62555649

KSUF's demand for coverage under the insurance policies issued to KSUF for defense and, to the extent necessary, indemnity costs incurred in connection with the Geist Lawsuit was and is wholly justified and valid, has in bad faith, and in breach of the covenant of good faith and fair dealing, withheld and denied insurance proceeds owed to KSUF and thus cannot prevail on its Complaint.

6.      Cincinnati's claims and defenses as they pertain to the duty to indemnify are not ripe for judicial review.

7.      Cincinnati failed to mitigate its damages or losses in that such alleged damages could have been avoided had Cincinnati not improperly refused to honor its coverage obligations, which preceded the filing of this lawsuit.

8.      KSUF reserves the right to assert such other and further affirmative defenses of which it subsequently learns through discovery or otherwise.

WHEREFORE, having fully answered Cincinnati's Complaint, KSUF prays that the Court (a) deny the relief requested by Cincinnati in its Complaint; (b) declare that Cincinnati has a duty to pay KSUF all sums to which it is entitled under the Cincinnati policies in connection with the Geist Lawsuit; (c) award KSUF its costs, expenses, and attorneys' fees incurred herein; and (d) grant KSUF such other and further relief as the Court deems just and proper.

### KSUF'S COUNTERCLAIMS FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND BAD FAITH

KSUF, by and through its undersigned counsel and pursuant to 28 U.S.C. § 2201, and for its Counterclaims against Cincinnati, hereby states and alleges as follows:

### NATURE OF THE ACTION

1.      This is an insurance coverage action concerning Cincinnati's obligation to defend and, if necessary, indemnify KSUF under a general liability policy (the "Policy" as described below) in connection with a lawsuit filed against KSUF styled *Forrest L. "Lenny" Geist & Heirs*

62555649

*v. Kansas State University, et al.*, originally filed in the District Court of McPherson County, Kansas as Case No. MP-2023-CV-000036 and later removed to the United States District Court for the District of Kansas as Case No. 6:23-cv-01129-JWB-GEB (the "Geist Lawsuit").

2.      Despite the fact that KSUF purchased insurance coverage to protect against exactly the types of liability asserted in the Geist Lawsuit, Cincinnati has failed or refused to reimburse KSUF for defense costs incurred in the Geist Lawsuit and refused to defend KSUF against the Geist Lawsuit.   Accordingly, KSUF brings these counterclaims against Cincinnati seeking damages for Cincinnati's breach of contract, vexatious refusal to pay a covered claim, and for a determination of the parties' respective rights under the Policy issued by Cincinnati to KSUF.

## THE PARTIES

3.      KSUF is a not-for-profit corporation organized and existing under the laws of the State of Kansas, with its principal place of business in Kansas.  Accordingly, KSUF is a citizen of Kansas.

4.      On information and belief, Cincinnati is a foreign insurance company organized and existing under the laws of the State of Ohio, with its principal place of business in Ohio, and therefore is a citizen of Ohio.

5.      On information and belief, Cincinnati is licensed to conduct insurance business in the State of Kansas.

## JURISDICTION AND VENUE

6.      Cincinnati is subject to personal jurisdiction in this District, and subject to the Court's specific and general jurisdiction, pursuant to due process, on the grounds that it consents to the Court's jurisdiction, regularly conducts or solicits business in the State of Kansas, engages in other persistent courses of conduct in the State of Kansas, and derives substantial revenue from

62555649

the sale of goods or services to persons or entities in the State of Kansas.

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 exclusive of interests and costs, and the action is between citizens of different states.

8.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 2201(a), because this action seeks the judicial declaration of the rights, statuses, and legal relations of and among the parties with regard to contracts of insurance and because an actual case or controversy of a justiciable nature exists among the parties.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

<u>**FACTUAL ALLEGATIONS**</u>

**KSUF's Charitable Purpose**

10.     KSUF is a not-for-profit corporation that exists to promote and support Kansas State University (the "University"), a public university with its main campus in Manhattan, Kansas.

11.     KSUF is designated by Kansas statute and agreement as the University's official foundation and strategic partner for philanthropy.

12.     On behalf of the University, KSUF is authorized to solicit, accept, and manage charitable gifts on behalf of the University.

13.     Those charitable donations are used to support the University through things like scholarships, faculty support, academic facility improvements, and other initiatives.

**The Geist Lawsuit**

14.     On or about April 28, 2023, Forrest L. "Lenny" Geist ("Geist") filed the Geist

Lawsuit in McPherson County District Court against KSUF, the University, and others alleging that the defendants misappropriated unspecified intellectual property, trade secrets, and copyright material purportedly owned by Geist.  A copy of the Petition in the Geist Lawsuit is attached as **Exhibit 1**.

15.     The Petition in the Geist Lawsuit alleges that starting in 2017, Geist "began formulating authentic business approaches" and "developed and documented his original authorship, ideas, notions, work, and visions into a confidential and proprietary business plan."

16.     The Petition further alleges that Geist approached the defendants (including KSUF) as prospective investors to secure financing for his business plan's confidential and proprietary content.

17.     The Petition further alleges that the defendants held a public press conference on January 17, 2023 regarding a project call "K-State 105" which misappropriated Geist's purported intellectual property, trade secrets, and copyrighted content.

18.     The Geist Lawsuit asserts ten (10) counts against KSUF: (1) violation of the Uniform Trade Secrets Act; (2) Violation of Defend Trade Secrets Act; (3) Violation of Economic Espionage Act; (4) Violation of Digital Millennium Copyright Act; (5) and (6) Tortious Interference; (7) Violating Federal Securities Laws; (8) Violating Computer Fraud & Abuse Act; (9) Cyber Crimes and (10) Criminal Conspiracy.

19.     On June 26, 2023, the Geist Lawsuit was removed from McPherson County District Court to the United States District Court for the District of Kansas where it is currently pending as case number 6:23-CV-01139-JAR-GEB.

### The Cincinnati Policy

20.     Cincinnati issued KSUF package Policy No. EPP 037 45 79, effective April 1, 2022

through April 1, 2023 (the "Policy").  A true and correct copy of the Policy is attached hereto as **Exhibit 2**.

21.     The Policy includes, among other coverages, general liability and umbrella liability coverage.

22.     At all times relevant to this action, the Policy was in full force and effect, and KSUF has fully complied with the terms and conditions of the Policy.

23.     KSUF paid Cincinnati all required premiums in consideration for the coverage provided by the Policy, and all conditions precedent to coverage under the Policy has occurred, been satisfied, or been waived.

24.     The Commercial General Liability Coverage ("CGL") Part of the Policy contains several different types of coverage, including Coverage A – Bodily Injury and Property Damage Coverage and Coverage B – Personal and Advertising Injury Liability Coverage.

25.     The Personal and Advertising Injury Liability Coverage states, in pertinent part, as follows:

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.     Insuring Agreement**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. …

b.     This insurance applies to "personal and advertising injury"

Policy (Ex. 2), at p. 220.

26.     The CGL Part of the Policy contains the following definitions:

**SECTION V – DEFINITIONS**

1.     "Advertisement" means a notice that is broadcast, telecast or

62555649

published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For purposes of this definition:

    a.    Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b.    Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement."

…

17.    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a.    False arrest, detention or imprisonment;

    b.    Malicious prosecution;

    c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.    The use of another's advertising idea in your 'advertisement'; or

    g.    Infringing upon another's copyright, trade dress or slogan in your 'advertisement'.

…

21.    "Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

62555649

a.   An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

b.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

c.   An appeal of a civil proceeding.

*Id.* at pp. 229, 232-33.

27.   The "Supplementary Payments" provision in the CGL coverage part states, in pertinent part:

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1.   All expenses we incur.

…

4.   All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earning up to $250 a day because of time off from work.

5.   All costs taxed against the insured in the "suit".

*Id.* at p. 224.

28.   The Insuring Agreement of the Commercial Umbrella Liability Coverage ("Umbrella") part states, in pertinent part:

**SECTION I – COVERAGE**

**A.   Insuring Agreement**

1.   We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

a.   Which is in excess of the "underlying insurance"; or

     b.  Which is either excluded or not insured by "underlying insurance".

*Id.* at p. 412.

   29.  The Umbrella coverage part defines the terms "Advertisement," "Personal and advertising injury," and "Suit" identically to the CGL coverage part referenced above.  *Id.* at pp. 424, 427-28.

   30.  "Ultimate net loss" means "the sum actually paid or payable in the settlement or satisfaction of the insured's legal obligation for damages, covered by this insurance, either by adjudication or compromise.  'Ultimate net loss' does not include Defense and Supplementary Payments as described in **SECTION I – COVERAGE, C. Defense and Supplementary Payments** of this Coverage Part."  *Id.* at p. 428.

   31.  The CGL part of the Policy is listed in the Schedule of Underlying Insurance as the "underlying insurance" to the Umbrella coverage part.

   32.  The Umbrella coverage includes a "Defense and Supplementary Payments" provision which states, in pertinent part, that Cincinnati "will have the right and duty to defend the insured against any 'suit' seeking damages because of 'bodily injury', 'personal and advertising injury', or 'property damage' to which this insurance applies" when the "applicable limits of the 'underlying insurance' and any other insurance have been exhausted by payment of claims" or "[d]amages are sought for 'bodily injury', 'personal and advertising injury' or 'property damage' which are not covered by 'underlying insurance' or other insurance."  *Id.* at p. 418.

### Cincinnati's Refusal to Defend

   33.  On April 26, 2023, KSUF tendered notice of a claim to Cincinnati arising from a cease-and-desist letter from Geist containing similar allegations to the Geist Lawsuit.

34.     On May 15, 2023, KSUF sent a supplemental claim notice to Cincinnati advising the Geist Lawsuit had been filed.

35.     In an email dated May 30, 2023, KSUF informed Cincinnati that it had retained Lathrop GPM LLP ("Lathrop") to serve as defense counsel in the Geist Lawsuit.

36.     On several occasions, Lathrop communicated with Cincinnati's counsel regarding the defense of the Geist Lawsuit, including repeatedly informing Cincinnati that KSUF was preparing to file a motion to dismiss in the Geist Lawsuit.

37.     Despite the fact that Lathrop had previously entered an appearance and had been actively defending KSUF in the Geist Lawsuit, Cincinnati sought to retain another law firm to serve as KSUF's defense counsel.

38.     Through a letter dated June 23, 2023, Cincinnati advised that it "will continue to investigate this claim with a full and complete *reservation of rights* as Cincinnati may have no obligation to pay, indemnify, or otherwise perform under the insurance policy." Emphasis in original.  Cincinnati also advised that it "has chosen to select the Hinkle Firm to defend KSUF." A true and correct copy of that June 23, 2023 letter is attached hereto as **Exhibit 3**.

39.     In correspondence dated June 30, 2023, KSUF advised that the conflict of interest between KSUF and Cincinnati entitled KSUF to retain counsel of its choosing qualified to handle KSUF's defense in the Geist Lawsuit.  KSUF reiterated it had selected Lathrop as defense counsel and requested reimbursement for the defense costs KSUF had incurred in defending the Geist Lawsuit.  A copy of that June 30, 2023 correspondence is attached as **Exhibit 4**.

40.     On July 14, 2023, Cincinnati, through counsel, provided KSUF a copy of the Complaint filed in this action.

41.     After the Complaint was filed and without receiving KSUF's consent or approval, panel counsel Cincinnati sought to substitute for KSUF's hired defense counsel advised on July 16, 2023 that it would file an answer to the allegations in the Geist Lawsuit the following day.

42.     KSUF immediately reiterated to Cincinnati that KSUF was filing a motion to dismiss the following day (July 17) and advised that filing an answer would undermine KSUF's defense.

43.     Since that time, KSUF has continued to defend the Geist Lawsuit without any assistance from Cincinnati.

44.     Cincinnati still refuses to pay KSUF's defense costs even though Cincinnati has asserted numerous "reservations of rights" upon which Cincinnati purports to deny coverage.

45.     Cincinnati's refusal to pay KSUF's defense costs is based solely on Cincinnati's refusal to consent to Lathrop serving as defense counsel.  But nowhere does the Policy obligate KSUF to retain Cincinnati's panel counsel, particularly where (as here) Cincinnati has reserved rights to disclaim coverage.  Instead, the Policy broadly obligates Cincinnati to pay all "reasonable expenses" incurred by KSUF in defending the Geist Lawsuit.

46.     In light of this language, its actions, and the applicable law, Cincinnati's refusal to pay KSUF's defense costs is unreasonable and amounts to a breach of contract.

47.     As a result, and contrary to the coverage afforded under the Policy, KSUF has been required to fund defense costs in connection with the Geist Lawsuit rightfully owed by Cincinnati.

48.     KSUF disputed, and still disputes, that the Policy does not insure against the Geist Lawsuit.  KSUF communicated to Cincinnati, and maintains to this day, that the Policy expressly provides defense and, if necessary, indemnity coverage against the Geist Lawsuit.

62555649

49.     KSUF now seeks all coverage to which it is entitled under the Policy arising from the Geist Lawsuit.

**FIRST CAUSE OF ACTION**
**DECLARATORY JUDGMENT**

50.     KSUF realleges and incorporates by reference all previous allegations as though set forth fully herein.

51.     A controversy has arisen between KSUF and Cincinnati as to their respective rights and duties under the Policy.

52.     KSUF asserts that Cincinnati has a duty to defend and, if necessary, indemnify KSUF for the claims and allegations set forth in the Geist Lawsuit as required by the terms and provisions of the Policy and applicable law.

53.     KSUF has incurred and paid sums, including defense costs, in connection with the Geist Lawsuit that fall within the coverage and limits afforded under the Policy.

54.     Cincinnati has disputed its obligation to defend or indemnify KSUF.

55.     By reason of the foregoing, a genuine dispute and actual justiciable controversy exists between KSUF and Cincinnati regarding Cincinnati's duty to defend under the Policy.

56.     A judicial determination as to Cincinnati's duty to defend under the Policy is necessary and appropriate at this time.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT**

57.     KSUF realleges and incorporates by reference all previous allegations as though set forth fully herein.

58.     Under the terms of the Policy, Cincinnati is obligated to defend KSUF against the Geist Lawsuit and to reimburse KSUF for all reasonable defense costs and fees incurred by KSUF

62555649

associated with defending the Geist Lawsuit.

59.     KSUF has incurred and paid sums, including defense costs, in connection with the Geist Lawsuit that fall within the coverage and limits afforded under the Policy.

60.     KSUF has paid Cincinnati all required premiums in consideration for the coverage provided by the Policy and has complied with all obligations and conditions precedent in the Policy.

61.     Cincinnati is obligated to pay KSUF's defense of the Geist Lawsuit under the terms of the Policy.

62.     Cincinnati has materially breached it duties and obligations under the Policy by refusing to acknowledge coverage for sums arising from the Geist Lawsuit that are covered under the Policy, specifically denied coverage for these amounts, and/or manifested an intent not to perform its obligations to cover these amounts and has materially breached its duties and obligations under the Policy.

63.     As a direct and proximate result of the Cincinnati's breach, Cincinnati has deprived KSUF of the benefit of insurance coverage and has damaged KSUF.

**THIRD CAUSE OF ACTION**
**BAD FAITH**

64.     KSUF realleges and incorporates by reference all previous allegations as though set forth fully herein.

65.     K.S.A. § 40-256 applies to Cincinnati's refusal to defend KSUF against the Geist Lawsuit.

66.     Section 40-256 provides, in pertinent part, as follows:

[I]n all actions hereafter commenced, in which judgment is rendered against any insurance company, ... if it appears from the evidence that such company ... has refused without just cause or excuse to pay the full amount of such loss, the court

62555649

in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action....

67.     KSUF has incurred sums, including defense costs, in connection with the Geist Lawsuit that falls within the coverage and limits afforded under the Policy.

68.     Cincinnati is aware of its obligations under the Policy to pay these amounts incurred and paid by KSUF in connection with the Geist Lawsuit.  However, to date, and despite KSUF's repeated demands, Cincinnati has, without reasonable cause or excuse, failed or refused to reimburse, or pay on behalf of, KSUF such sums paid in connection with the Geist Lawsuit. In so doing, Cincinnati has acted wrongfully, unreasonably, and vexatiously.

69.     Cincinnati has also refused, and continues to refuse, to accord any reasonable interpretation to the provisions of the Policy and has refused, and continues to refuse, to accord any reasonable application of such provisions to KSUF's claims arising from the Geist Lawsuit. In so refusing, Cincinnati has acted to protect its own interests in disregard of the interests of its insured, KSUF.

70.     Cincinnati owes KSUF a duty of good faith and fair dealing and has breached this duty, including but not limited to, engaging in the following acts:

a)     Refusing to accord a reasonable interpretation of the provisions of the Policy and refusing to reasonably apply such provisions to the Geist Lawsuit;

b)     Unreasonably failing and/or refusing to pay for the defense of the Geist Lawsuit;

71.     Cincinnati's above-described actions constitute a breach of its duty of good faith and fair dealings owed to KSUF.

62555649

72.     As a direct and proximate result of Cincinnati's wrongful conduct, Cincinnati is liable to KSUF for actual damages in an amount to be determined at trial incurred and paid by KSUF in connection with the Geist Lawsuit, together with the costs and disbursements of this action, including but not limited to, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and other costs and additional damages allowed.

### PRAYER FOR RELIEF

WHEREFORE, Defendant Kansas State University Foundation respectfully prays for a judgment against Cincinnati Insurance Company for the following:

a)     Actual damages in an amount that is fair and reasonable;

b)     Pre-judgment and post-judgment interest based upon and added to the damages as allowed by law;

c)     Attorneys' fees and costs associated with this action under K.S.A. § 40-256 and/or *Farm Bureau Mutual Insurance Co. v. Kurtenbach By and Through Kurtenbach*, 961 P.2d 53 (Kan. 1998);

d)     Consequential, special, incidental, and punitive damages;

e)     A declaration that Cincinnati is obligated under the Policy to defend and, if necessary, indemnify KSUF against the Geist Lawsuit; and

f)     Such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, KSUF demands trial by jury in this action of all issues so triable.

62555649

Dated: October 19, 2023     LATHROP GPM LLP

           */s/ Kimberly K. Winter*
          Kimberly K. Winter, KS #17912
          Noah H. Nash, *pro hac vice*
          2345 Grand Blvd., Suite 2200
          Kansas City, Missouri  64108
          Telephone: 816.292.2000
          Facsimile: 816.292.2001
          Kim.Winter@lathropgpm.com
          Noah.Nash@lathropgpm.com

          Attorneys for Defendant Kansas State
          University Foundation

## CERTIFICATE OF SERVICE

   I hereby certify that on this 19 day of October, 2023, a copy of the above pleading was filed with the Clerk of Court for the District of Kansas via the District Court ECM/ECF system. The undersigned further certifies that on October 19, 2023, a true and correct copy of the foregoing has also been forwarded to Defendant Forrest "Lenny" Geist via U.S. first class mail, postage prepaid addressed as follows:

   Lenny Geist
   11334 W. 131st Street
   Overland Park, KS 66213

         /s/  *Kimberly K. Winter*
         Attorney for Defendant Kansas State University
         Foundation

62555649