IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THE CINCINNATI INSURANCE
COMPANY,

        *Plaintiff*,

v.

KANSAS STATE UNIVERSITY
FOUNDATION and FORREST L.
"LENNY" GEIST,

        *Defendants*.

Case No. 23-CV-1139-EFM

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff Cincinnati Insurance Company ("Cincinnati")'s Motion for Partial Dismissal (Doc. 23). Cincinnati seeks to dismiss Counts II and III of Defendant Kansas State University Foundation ("KSUF")'s counterclaims. Specifically, Cincinnati argues that KSUF fails to state a claim for breach of contract and breach of the implied duty of good faith and fair dealing. Because KSUF fails to demonstrate that the contract's plain language or existing Kansas law supports its counterclaims, the Court grants Cincinnati's Motion for Partial Dismissal.

Cincinnati also asks this Court to grant it an enlargement of time to file an answer within fourteen days from the Court's ruling on this motion. Because the Federal Rules of Civil Procedure already dictate that the filing of motions to dismiss toll the time to file answer, the Court denies Cincinnati's request as moot, and instructs that it follow the guidance provided by the Federal Rules.

## I.    Factual and Procedural Background[1]

KSUF is a non-profit corporation that exists to promote and support Kansas State University. Cincinnati is an insurance company that provides commercial liability coverage to its customers. Cincinnati issued Policy Number EPP 037 45 79 to KSUF, effective April 1, 2022, through April 1, 2023 (the "Policy"). The Policy includes, among other coverages, general liability and umbrella liability coverage.

Relevant in this case, the "Personal and Advertising Injury Liability" section of the Commercial General Liability Coverage Form states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:
>
> (1) The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE; and
>
> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under. . . PERSONAL AND ADVERTISING INJURY LIABILITY . . . .
>
> No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under SUPPLEMENTARY PAYMENTS . . . .

Similarly, the "Defense and Supplementary Payments" section of the Commercial Umbrella Liability Coverage Form states:

> 1. We will have the right and duty to defend the insured against any "suit" seeking damages because of . . . "personal and advertising injury" . . . to which this insurance applies. We will have no duty to defend the insured against any "suit" seeking damages for . . . "personal and advertising injury" . . . to which this

---

[1] As this case includes a motion to dismiss defendant's counterclaim, the facts relating to defendant's claim are taken from the counterclaim and viewed in the light most favorable to defendant. *Scan Top Enter. Co. v. Larson*, 2015 U.S. Dist. LEXIS 39839, at *3–4 n.3 (D. Kan. Mar. 27, 2015) (citing *Berrey v. Asarco Inc.*, 439 F.3d 636, 640 (10th Cir. 2006)).

insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . . .

2. Our right and duty to defend ends when the applicable Limits of Insurance, as stated in the Declarations, has been exhausted by payment of claims.

The "Supplementary Payments" sections of both the Commercial General Liability Coverage and the Commercial Umbrella Liability Coverage Forms obligate Cincinnati to pay the following when providing a defense:

All expenses we incur.

. . .

All reasonable expenses incurred by the insured at our request to assist us in the investigation or defenses of the claim or "suit," including the actual loss of earnings.

All costs taxed against the insured in the "suit."

On or about April 28, 2023, pro se plaintiff Forrest L. "Lenny" Geist filed a lawsuit (the "Underlying Lawsuit") against KSUF, Kansas State University, and others alleging that the defendants misappropriated unspecified intellectual property, trade secrets, and copyright materials purportedly owned by Geist. Geist's petition alleges that in 2017 he "began formulating authentic business approaches" and "developed and documented his original authorship, ideas, notions, work, and visions into a confidential and proprietary business plan." The petition further alleges that Geist approached the defendants—including KSUF—as prospective investors to secure financing for his business plan's confidential and proprietary content. Geist claims that the defendants held a public press conference on January 17, 2023, regarding a project called "K-State 105" which misappropriated Geist's purported intellectual property, trade secrets, and copyrighted content.

On April 26, 2023, KSUF notified Cincinnati of a potential claim from Mr. Geist arising from a cease-and-desist letter that contained similar allegations as the Underlying Lawsuit. KSUF

notified Cincinnati because it believed that the Policy's coverage of "personal and advertising injury" would apply to the Underlying Lawsuit.

On May 15, 2023, KSUF sent a supplemental claim notice to Cincinnati advising it that Geist had filed the Underlying Lawsuit. On May 30, 2023, KSUF informed Cincinnati that it had hired Lathrop GPM LLP to serve as defense counsel in the Underlying Lawsuit. On June 23, 2023, Cincinnati sent a letter to KSUF advising that it would continue to investigate the claim with a full and complete reservation of rights, and it had chosen Hinkle Law Firm to defend KSUF. On June 30, 2023, KSUF sent Cincinnati a letter explaining how the conflict of interest between KSUF and Cincinnati entitled KSUF to retain independent counsel of its choosing. KSUF reiterated that it had selected Lathrop as its defense counsel and requested reimbursement for the defense costs KSUF had incurred in defending the Underlying Lawsuit.

On July 13, 2023, Cincinnati filed this lawsuit against KSUF and Geist. On October 19, 2023, KSUF filed an Answer and Counterclaims against Cincinnati. KSUF counterclaims for declaratory judgment in Count I, alleges breach of contract in Count II, and alleges breach of the implied duty of good faith and fair dealing in Count III. On November 22, 2023, Cincinnati filed the present motion, seeking dismissal of Counts II and III. KSUF responded and Cincinnati replied in a timely manner. The Motion is now ripe for ruling.

## II.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim

---

[2] Fed. R. Civ. P. 12(b)(6).

to relief that is plausible on its face.'"[3] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[5] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[6] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[7] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[8]

### III.     Analysis

**A.     Motion to Dismiss KSUF's Breach of Contract Claim**

First, Cincinnati asks this Court to dismiss KSUF's counterclaim for breach of contract, arguing that neither the Policy nor Kansas law entitles KSUF to select its own defense counsel for the Underlying Lawsuit.

To state a claim for breach of contract under Kansas law, a party must allege facts showing five elements: "(1) the existence of a contract between the parties; (2) sufficient consideration to

---

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678–79.

[7] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[8] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach."[9] Here, Cincinnati contends that KSUF fails to allege facts showing that breach occurred as required under the fourth element.

Both parties agree that the Policy is the contract governing this dispute. Likewise, both parties agree that the Policy requires Cincinnati, as the insurer, to defend KSUF, as the insured, against any suit seeking damages because of personal and advertising injury. However, the parties disagree over who gets to choose the independent counsel to represent the insured in its defense against the Underlying Lawsuit. Cincinnati contends that it has the right to choose KSUF's counsel, but KSUF contends that it has the right to choose its own counsel. Resolving this dispute requires analyzing two sub-issues: (1) whether the Policy's plain language requires Cincinnati to pay for counsel hired by KSUF and (2) whether Kansas law recognizes that counsel cannot be truly independent unless selected by the insured. The Court will address each in turn.

*1.     The Policy's Plain Language*

Cincinnati asks this Court to dismiss KSUF's breach of contract claim, arguing that the Policy's plain language contains no indication that Cincinnati is obligated to approve Lathrop as KSUF's defense counsel.

"Under Kansas law, an insurance policy constitutes a contract, and the interpretation of a contract is a question of law."[10] "The primary rule in interpreting written contracts is to ascertain the intent of the parties."[11] "In ascertaining the intent of the parties, Kansas courts consider the

---

[9] *Assessment Techs. Inst., LLC v. Parkes*, 588 F. Supp. 3d 1178, 1226 (D. Kan. 2022).

[10] *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1233 (10th Cir. 2015) (citing *AMCO Ins. Co. v. Beck*, 261 Kan. 266, 929 P.2d 162, 165 (Kan. 1996)).

[11] *Liggatt v. Emp'rs Mut. Cas. Co.*, 273 Kan. 915, 46 P.3d 1120, 1125 (Kan. 2002).

policy as a whole, rather than viewing provisions in isolation."[12] In doing so, courts "must begin with the plain language of the insurance agreement itself."[13]

"Where an insurance policy's plain language is ambiguous, Kansas courts adopt the construction most favorable to the insured."[14] However, "[w]here the language of an insurance policy is clear and unambiguous," courts must apply "its plain and ordinary sense."[15] "Thus, if the terms of the contract are clear, there is no room for rules of construction, and the intent of the parties is determined from the contract itself."[16]

In evaluating the Policy's plain language, the Court focuses on the parts of the Policy that both parties highlight the most: general liability and umbrella liability coverage. Specifically, these sections outline Cincinnati's contractual obligations to KSUF when KSUF faces personal and advertising injury liability.

Although these provisions certainly obligate Cincinnati to defend KSUF against any suit seeking damages for personal and advertising injury, it does not promise a defense *by counsel of KSUF's choice*. Rather, the Policy clearly states that Cincinnati has "no other obligation or liability to pay sums or perform acts or services" outside of those expressly provided for under the Supplementary Payments sections. Even when evaluating what Cincinnati must pay under the Supplementary Payments sections, the uncontroverted facts demonstrate that KSUF hired Lathrop on its own accord—meaning, the costs associated with hiring Lathrop were not expenses that

---

[12] *BancInsure*, 796 F.3d at 1233 (citing *Long v. St. Paul Fire & Marine Ins. Co.*, 589 F.3d 1075, 1082 (10th Cir. 2009)).

[13] *Union Std. Ins. Co. v. Hobbs Rental Corp.*, 566 F.3d 950, 952 (10th Cir. 2009).

[14] *BancInsure*, 796 F.3d at 1233.

[15] *Id.* (citing *Warner v. Stover*, 283 Kan. 453, 153 P.3d 1245, 1247 (Kan. 2007)).

[16] *Id.* (further citations, quotations, and brackets omitted).

*Cincinnati incurred*, nor were they made at *Cincinnati's request*. As such, the Policy does not obligate Cincinnati to pay those costs.

Even construing the Policy in KSUF's favor, the Court cannot conclude that the Policy's silence on who chooses defense counsel reasonably permits the insured to select defense counsel at the insurer's expense. Such a result would contradict the Policy's clear attempt to disclaim any further, unspecified obligations for Cincinnati to pay or perform. Therefore, the Court concludes that the Policy's plain language does not entitle KSUF to choose its own defense counsel at Cincinnati's expense. As such, KSUF fails to plausibly allege a breach of contract claim on this front.

### 2. *Kansas Law's Requirements for Independent Counsel*

Next, Cincinnati asks this Court to dismiss KSUF's breach of contract claim, arguing that Kansas law imposes no implied contractual duty upon the insurer to provide the insured with the counsel of its choice. Although Cincinnati concedes that a conflict of interest arose when it asserted its reservation of rights to later deny coverage, Cincinnati claims that such an assertion does not legally entitle KSUF to select independent counsel at Cincinnati's expense.

"Kansas law requires an insurer to provide a defense to an insured if there is a potential for liability under the policy."[17] "[A] conflict of interest naturally arises when an insurer hires an attorney to defend the insured but reserves its right to disclaim coverage depending on the outcome of the litigation."[18] "In order to eliminate the conflict that is necessarily created by these circumstances, the insurer must provide the insured with 'independent counsel' whose only legal

---

[17] *Davin v. Ath. Club of Overland Park*, 32 Kan. App. 2d 1240, 1243, 96 P.3d 687 (2004).

[18] *Hackman v. W. Agric. Ins. Co.*, 2012 Kan. App. Unpub. LEXIS 311, at *38 (Kan. Ct. App. Apr. 27, 2012).

responsibility is to represent the interests of the insured."[19] But if the insured rejects the independent counsel provided to it by the insurer, "Kansas law does not require [the insurer] to pay for [the insured's] choice of counsel."[20]

To support these principles, Cincinnati cites *Eye Style Optics v. State Farm*.[21] In that case, this Court considered a similar issue to the one presented here. There, the plaintiff notified the defendant insurance company that it desired to hire independent counsel of plaintiff's choosing—notably, also Lathrop—to represent it in the underlying lawsuit.[22] The insurance company refused to honor plaintiff's request, arguing that it may appropriately provide plaintiff a defense through its choice of counsel subject to a reservation of rights.[23] The plaintiff contended that the insurance company's failure and refusal to pay for its selected defense counsel constituted a breach of defendant's "duty to defend" under Kansas law.[24]

The court disagreed, reasoning that the insurance company's selection of who will represent the plaintiff does not render void that counsel's ability to be "independent."[25] Instead, the court reiterated the "established principle" that "insurance companies often hire independent counsel to represent an insured while reserving the right to later contest coverage. In such circumstances, retained counsel owe their duty of loyalty to the insured, not the insurance

---

[19] *Id.* at *39; *see also Aselco, Inc. v. Hartford Ins. Grp.*, 28 Kan. App. 2d 839, 21 P.3d 1011, 1020 (2001) ("[T]he proper way for an insurer to protect both its insured's and its own interests in cases of conflict is to hire independent counsel for the insured and reserve all of its own rights under the policy.").

[20] *Eye Style Optics, LLC v. State Farm Fire & Cas. Co.*, 2014 U.S. Dist. LEXIS 75031, at *11–12 (D. Kan. June 3, 2014).

[21] *See id.*

[22] *Id.* at *3.

[23] *Id.*

[24] *Id.* at *3–4.

[25] *Id.* at *13.

carrier."[26] As such, the court found that the appointed counsel was independent because the plaintiff alleged no facts demonstrating that counsel was either unable to defend all claims asserted against the plaintiff or unable to show loyalty to the plaintiff.[27]

Although *Eye Style* is an unpublished Kansas case, the Court finds its factual similarities and legal reasoning extremely persuasive. In contrast, KSUF does not cite any cases applying Kansas law to support its proposition that "counsel selected by the insurer is not 'independent.'" Rather, KSUF cites law from the 5th, 7th, and 11th Circuits; the Southern District of New York; and Alaska. Its lone 10th Circuit case applies New York law, and its District of Kansas case involves a shareholder derivative lawsuit—not an insurer's duty to defend. Regardless of whether those jurisdictions forbid insurer-selected counsel, under Kansas law, insurance companies often select independent counsel to represent an insured while reserving the right to later contest coverage.[28]

Here, once KSUF notified Cincinnati of the Underlying Lawsuit, Cincinnati sent KSUF a letter asserting its reservation of rights and promptly hired Hinkle to represent KSUF's interests. Although KSUF has emphatically voiced its preference of Lathrop's representation to Hinkle's, it has not alleged facts explaining why Hinkle fails to qualify as independent counsel. And counsel is not automatically stripped of its independence merely because it was hired by the insurer.[29] As such, the Court finds that Cincinnati has met its duty to defend KSUF under the terms of the Policy.

---

[26] *Id.* at *12 (cleaned up) (quoting *United States v. Daniels*, 163 F. Supp. 2d 1288, 1290 (D. Kan. 2001)).

[27] *Id.* at *13.

[28] *Daniels*, 163 F. Supp. 2d at 1290 (citing *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 712, 732 P.2d 741, 745 (1987)).

[29] *Eye Style Optics*, 2014 U.S. Dist. LEXIS 75031, at *13.

KSUF need not accept Cincinnati's provided representation, but if it chooses to reject it, neither the Policy nor Kansas law obligates Cincinnati to approve of and finance KSUF's chosen counsel. Therefore, because KSUF fails to plausibly allege that Cincinnati has breached its duty to defend the insured with independent counsel, the Court grants Cincinnati's Motion to Dismiss KSUF's breach of contract claim.

**B.     Motion to Dismiss KSUF's Breach of the Implied Duty of Good Faith Claim**

Second, Cincinnati asks this Court to dismiss KSUF's counterclaim for breach of the implied covenant of good faith and fair dealing, arguing that it is merely a repackaging of the breach of contract claim and thus fails for the same reasons.

"Inherent in virtually every contract—including an insurance policy—is the duty of all parties to perform their contractual obligations in good faith."[30] "Under long-standing Kansas law, an action to address an insurer's alleged breach of the duty to act in good faith in defending and settling a claim against its insured sounds in breach of contract."[31] "Breach of the implied covenant of good faith and fair dealing is *not a separate claim*."[32] "Rather, it is just another theory of breach of contract."[33] Thus, to assert a cause of action against an insurer for breach of the duty of good faith and fair dealing under contract law, the insured must: "(1) plead a cause of action for breach of contract, not a separate cause of action for breach of duty of good faith, and (2) point to a term

---

[30] *Progressive Nw. Ins. v. Gant*, 2018 U.S. Dist. LEXIS 120643, at *56 (D. Kan. July 19, 2018) (citing *Estate of Draper v. Bank of Am.*, 288 Kan. 510, 205 P.3d 698, 710 (Kan. 2009)).

[31] *Id.* at *56–57.

[32] *H&C Animal Health v. Ceva Animal Health*, 499 F. Supp. 3d 920, 940 (D. Kan. 2020) (emphasis added) (further citations and quotations omitted).

[33] *Bad Rhino Games, LLC v. Turn Me Up Games, Inc.*, 2023 U.S. Dist. LEXIS 191475, at *10 (D. Kan. Oct. 25, 2023).

of the contract which the defendant allegedly violated by failing to abide by the good faith spirit of that term."[34]

In its Counterclaim, KSUF labels its "third cause of action" as "bad faith." It claims that Cincinnati breached of its duty of good faith and fair dealings by (1) refusing to accord a reasonable interpretation of the provisions of the Policy, (2) refusing to reasonably apply such provisions to the Underlying Lawsuit, and (3) unreasonably failing and/or refusing to pay for the defense of the Underlying Lawsuit. However, caselaw makes clear that "bad faith"—or stated more precisely, the duty of good faith and fair dealings—is not a separate cause of action. Thus, to the extent that KSUF pleads a separate claim for breach of the duty of good faith, it is dismissed.

Viewing KSUF's allegations liberally, the Court also considers the possibility that KSUF meant to plead a breach of the duty of good faith as an alternative theory under Count II. In that case, Cincinnati argues that if this Court determines that Cincinnati did not breach the terms of the Policy, then KSUF cannot possibly identify a term in the Policy that Cincinnati violated by failing to abide by the good faith spirit of that term. The Court agrees.

Here, not only does KSUF fail to point to a term of the contract that supports its assertion that Cincinnati acted in bad faith, but it also omits those terms' essential details. For example, KSUF claims that "Cincinnati's refusal to 'pay all reasonable expenses' incurred by KSUF in defending the Geist Lawsuit giv[es] rise to the claim for breach of the duty of good faith." As discussed, however, the Policy unambiguously obligates Cincinnati to pay "all reasonable expenses incurred by the insured *at our request* to assist us in the investigation or defenses of the

---

[34] *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1244 (10th Cir. 2006) (citing *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996)).

claim." It also clearly disclaims all obligations or liabilities to pay sums or perform acts or services unless expressly provided for.

Therefore, Cincinnati "has not breached its duty of good faith by applying the unambiguous terms" of the Policy.[35] And, without a breach of the Policy, KSUF "cannot state a plausible claim for breach of the duty of good faith and fair dealing."[36] Accordingly, the Court grants Cincinnati's Motion to Dismiss KSUF's "bad faith" claim.

## C.  Motion for Enlargement of Time

Lastly, Cincinnati asks this Court to grant it an enlargement of time to file an answer within 14 days from the Court's ruling on this motion. However, it is well-established that filing a Rule 12(b)(6) motion before filing an answer "tolls the time to answer"[37] and renders the responsive pleading due "within 14 days after notice of the court's action."[38] Moreover, KSUF does not object to the Federal Rules of Civil Procedure dictating Cincinnati's filing deadlines in this case. As such, the Court denies Cincinnati's motion for enlargement of time as moot, finding that the deadlines set by the Federal Rules suffice.

**IT IS THEREFORE ORDERED** that Cincinnati's Motion for Partial Dismissal (Doc. 23) is **GRANTED**.

**IT IS FURTHER ORDERED** that Cincinnati's Motion for Enlargement of Time is **DENIED as MOOT**.

**IT IS SO ORDERED.**

---

[35] *Steven Volkswagen v. Zurich Am. Ins.*, 2020 U.S. Dist. LEXIS 90211, at *20 (D. Kan. May 22, 2020).

[36] *Atl. Specialty Ins. v. Blue Cross & Blue Shield of Kan., Inc.*, 2023 U.S. Dist. LEXIS 103737, at *11 (D. Kan. June 14, 2023).

[37] *Yarbary v. Martin, Pringle, Oliver, Wallace & Bauer, LLP*, 2014 U.S. Dist. LEXIS 57792, at *7 (D. Kan. Apr. 24, 2014) (citing Fed. R. Civ. P. 12(a)(4); *Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1120 (10th Cir. 2006)).

[38] Fed. R. Civ. P. 12(a)(4).

Dated this 29th day of April, 2024.

                                                                  ERIC F. MELGREN
                                                                  CHIEF UNITED STATES DISTRICT JUDGE